Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9627 | **DATE** | 8/9/2002 |
| **CASE TITLE** | StunFence, Inc. et al vs. Gallagher Security (USA), Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing re-set for 9/10/2002 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** All pending motions are granted in part and denied in part as follows: Gallagher's motion to dismiss is granted with respect to Counts I, II, V, VI and X and denied with respect to Counts III and XI. Power Fence's motion is granted with respect to Count V and denied with respect to Counts IV and IX. Finally, StunFence's motion to dismiss is granted with respect to Counts VI and IX and denied with respect to Counts III, IV and V of the counterclaim.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 1 2 2002 | |
| | Notified counsel by telephone. | date docketed | 47 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

STUNFENCE, INC. and ROBERT GILMOUR, )
)
Plaintiffs, )
)
vs. ) 01 C 9627
)
GALLAGHER SECURITY (USA), INC.; GALLAGHER )
SECURITY (INT.) LIMITED; GALLAGHER GROUP )
LIMITED; and GALLAGHER POWER FENCE, INC., )
)
)
Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on motions to dismiss certain counts of the complaint as well as certain counts of the counterclaim. For the reasons set forth below, the motions are denied in part and granted in part.

## BACKGROUND

Plaintiff Robert Gilmour is a former employee of Defendant Gallagher Security (USA), Inc., a subsidiary of Defendants Gallagher Security International and Gallagher Group Limited (collectively referred to as "Gallagher"). Gallagher initially engaged in direct sales in the United States, but in mid-1999 decided to abandon that method in favor of relationships with independent distributors and to attempt to market its fencing to correctional institutions. At that time, Gallagher terminated Gilmour's employment but gave him the option to continue dealing with Gallagher as a distributor, operating in the portion of the northeast United States as far south as Tennessee and

North Carolina and as far west as the Mississippi River. He accepted, and the parties executed an agreement giving Gilmour and his company, StunFence, Inc. (collectively referred to as "StunFence"), the exclusive right to distribute Gallagher products within that area, the non-exclusive right to distribute in other parts of the United States, and exclusive control over certain dealers and subdistributors, as well as other things.

According to StunFence, over the ensuing two years, they built a market for nonlethal electric fencing with correctional facilities and other commercial customers in the United States. They attest that by late 1999, Gallagher was not living up to the terms of the agreement; at that time Gallagher allegedly did business directly with subdistributors that StunFence believed were to deal only with them. At around the same time, the parties began to have disagreements about StunFence's use of less expensive parts such as nuts, bolts, and brackets not manufactured by Gallagher in Gallagher fences. StunFence also avers that Gallagher solicited customers within StunFence's exclusive distribution area from 2000 until the present time. Supply and invoicing also presented numerous problems. The tension between the two parties escalated until November 2001, when Gallagher terminated its distribution arrangement with StunFence.

Less than three weeks later, StunFence filed suit, alleging antitrust claims, breach of contract, and tortious interference with economic advantage against Gallagher and Defendant Gallagher Power Fence, Inc. ("Power Fence"), another Gallagher distributor. Gallagher then counterclaimed, citing breach of contract, trademark infringement, fraud, and tortious interference with economic relations, as well as attempting to enforce the non-competition clause of the distribution agreement.

Each party now moves to dismiss certain portions of the complaint and counterclaim pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim.

**LEGAL STANDARD**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint. Triad Associates, Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989). In ruling on a motion to dismiss, the court must construe the allegations of the complaint in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the complaint must be accepted as true. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993).

The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992). With these principles in mind, we turn to the instant motion.

**DISCUSSION**

**I. StunFence's Complaint**

*A. Counts I, II, V, and VI: The Sherman Act Claims*

The first two counts of the complaint allege tying arrangements in violation of § 1 of the Sherman Act. 15 U.S.C. § 1. To state a claim of illegal tying under § 1, a plaintiff must allege that the defendant conditioned the purchase of one product, the tied product, on purchase of another separate product, the tying product. Eastman Kodak Co. v. Image Technical Servs., Inc., 112 S. Ct. 2072, 2079 (1992). Moreover, a viable claim must allege that the supplier possesses substantial economic power over the tying product, that the tie affects a substantial volume of commerce, and that the tie has an anti-competitive effect on the tied market. Jefferson Parish Hosp. Dist. No. 2 v.

Hyde, 104 S. Ct. 1551, 1560 (1984); Eastman Kodak, 112 S. Ct. at 2079. Gallagher avers that StunFence cannot make out a claim because the allegations of the complaint negate the existence of a tying claim as to Gallagher's degree of economic power and the effect of their alleged actions on competition within the tied market.

StunFence principally relies on the relaxed requirements of notice pleading to defend the adequacy of their complaint. Indeed, their allegations contain little more than neatly ordered terms of art. Their reliance is misplaced; it is well-settled that, despite the rules of notice pleading, a court shirks its judicial responsibilities to allow a factually bare allegation of illegal activities to open the door to the uniquely onerous discovery that accompanies an antitrust claim. Car Carriers v. Ford Motor Co., 745 F.2d 1101, 1106, 1110 (7th Cir. 1984); Havoco v. Shell Oil Co., 626 F.2d 549, 553 (7th Cir. 1980).

In addition, Gallagher points to numerous allegations of specific facts that indicate the tying market is not affected by their actions; this would contradict, not support, the presence of a tying claim. StunFence belatedly attempts to salvage the Sherman Act counts in their response by claiming that the tied products have special qualities that are required for use in electric fencing. However, this is in conflict with both StunFence's own price comparisons, in which StunFence describes the nuts, bolts, and other products as "identical or substantially similar" to those available to the consuming public at much lower prices. Compl., ¶¶ 31, 46, 49, 60, 143, 158. With products as common as these, even a manufacturer of a much more widely used product than electric fencing would be hard-pressed to affect a substantial volume of commerce. Although we must draw every reasonable inference from the facts alleged in the complaint, it is not reasonable to postulate that Gallagher could hold the sway that StunFence purports over such a broad market. Car Carriers, 745

F.2d at 1110 (stating that a court need not "ignore commercial reality" in considering a motion to dismiss). StunFence's allegations, rather than establishing a Sherman Act violation, indicate that Gallagher does not wield the power to affect a substantial volume of commerce in the allegedly tied products, such that its actions could have an anti-competitive effect. The absence of these crucial aspects of an antitrust claim is fatal to StunFence's tying claims. Havoco, 626 F.2d at 554.

Count V is a conspiracy claim. As is the case with allegations of tying arrangements, and even perhaps more so, claims of conspiracies in restraint of trade cannot rest on boilerplate recitals but must provide some sort of factual basis in which we can detect a possible violation. Id. at 1107 n.4; In re Microsoft Corp. Antitrust Litigation, 127 F. Supp. 2d 728, 731 (D. Md. 2001), quoting DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999). Simply put, Count V does nothing more than advance conclusory allegations that do not establish a "factual predicate concrete enough to warrant further proceedings." DM Research, 170 F.3d at 55. Our only option is to dismiss Count V for failure to state a claim.

Finally, we turn to Count VI, which alleges that Gallagher has monopolized the correctional and commercial markets for nonlethal electric fencing in violation of § 2 of the Sherman Act. 15 U.S.C. § 2. Unlike the other three Sherman Act counts, this one supplies enough detail that the possibility of a violation rises above mere speculation. In it, StunFence alleges that Gallagher has a better than 90% share of the applicable markets and that Gallagher's unilateral refusal to deal with StunFence, in combination with its overwhelming influence in the defined markets, operated as an illegal monopolization. Gallagher principally quibbles about the accuracy of StunFence's numbers with regard to the Gallagher's market share, particularly in light of other allegations within the complaint about Gallagher's difficulty in penetrating the U.S. markets two years back in 1999.

Although it does seem implausible that Gallagher's numbers would explode over such a short period of time, it is certainly not unimaginable. Whether StunFence will eventually be able to back up these numbers is not a question that can be addressed on a motion to dismiss; all that matters for current purposes is that StunFence has sufficiently alleged a refusal to deal by a company that, if all the facts within Count VI are true, would likely constitute a monopolistic power. For now, that is enough to allow them to proceed to matters of proof. See Wigod v. Chicago Mercantile Exchange, 981 F.2d 1510, 1520 (7th Cir. 1992).

*B. Count X: Fraudulent Misrepresentation*

To state a claim of fraudulent misrepresentation, StunFence must allege that Gallagher made a false statement of material fact, which Gallagher knew or believed to be false, to induce StunFence to act. Schrager v. North Community Bank, 767 N.E.2d 376, 382 (Ill. App. Ct. 2002). Moreover, StunFence must have justifiably relied on Gallagher's statement and been damaged. Id. The statements StunFence places at the heart of its claim consist of assurances made at the time the parties negotiated the distribution agreement. According to StunFence, Gallagher stated a desire for StunFence to become and remain a successful independent dealer. In addition, they claim that Gallagher pledged continued support StunFence and promised that Gallagher would not act in any capacity as a dealer in Gallagher products within StunFence's distribution area.

StunFence immediately encounters difficulty with this claim because the statements in question involve not past or present conduct but statements of future intent, which are generally not actionable under a theory of fraudulent misrepresentation. Doherty v. Kahn, 682 N.E.2d 163, 176 (Ill. App. Ct. 1997). An exception to this general rule applies if the statements form a portion of a scheme to defraud. Stamatakis Industries, Inc. v. King, 520 N.E.2d 770, 772 (Ill. App. Ct. 1987).

- 6 -

Seldom can a scheme be extrapolated from statements of future intent unless the promisor had no intention or ability to make good on a promise at the time the promise was made. See, e.g., Doherty, 682 N.E.2d at 563; Bradley Real Estate Trust v. Dolan Associates Ltd., 640 N.E.2d 9, 13 (Ill. App. Ct. 1994); Borcherding v. Anderson Remodeling Co., Inc., 624 N.E.2d 887, 893 (Ill. App. Ct. 1993). StunFence claims that this is such a situation; the allegations within Count X specifically claim that Gallagher made the assurances at issue with no intent of following through on them. Bare allegations that a promisor intended not to follow through have allowed a plaintiff to withstand a motion to dismiss. See Johnson v. George J. Ball, Inc., 617 N.E.2d 1355, 1362 (Ill. App. Ct. 1993). However, when a complaint goes on to state facts that contradict the notion of a deliberately empty promise, allegations of promissory fraud are properly dismissed. Doherty, 682 N.E.2d at 176; Ault v. C.C. Services, Inc., 597 N.E.2d 720, 723 (Ill. App. Ct. 1992). In this case, the facts alleged in the complaint state that Gallagher did not act contrary to the alleged representations until some time after the parties executed the distribution agreement. Compl., ¶¶ 28, 29, 36, 38. These pleaded facts thus contradict StunFence's contention that Gallagher did not intend to make good on their statements when they were made. Whatever subsequent developments occurred in the course of the parties' performance, StunFence's own allegations do not support the notion that Gallagher did not intend to effectuate the promises made when the parties entered the distribution agreement. Consequently, Count X is dismissed.

C. *Count III: § 13(a) of Robinson-Patman Act*

Count III of the complaint alleges a violation of § 13(a) of the Robinson-Patman Act. To allege a prima facie case under this section, a plaintiff must allege a difference in prices to two purchasers in contemporaneous sales in interstate commerce by a single seller of commodities of like

grade and quality where discrimination has a prohibited effect on competition. Texaco v. Hasbrouck, 110 S. Ct. 2535, 2542-43 (1990). Gallagher challenges the sufficiency of only one aspect of StunFence's claim: comparable sales. They attest that StunFence has failed to identify a separate purchaser, how or whether that purchaser is in competition with StunFence, the geographic area where the competition takes place, what goods were sold, and whether goods were of like grade and quality. Paragraphs 45 and 83 allege a difference in prices and gives specific examples of products that were differently priced. Paragraph 81 names StunFence and PowerFence as the competitors. The complaint also alleges that a single seller of commodities, Gallagher, sold a commodity, electric fencing, in interstate commerce. ¶¶ 3, 81. Paragraphs 82 and 83 specifically allege that the products sold were identical or differed in insubstantial ways, such as color, and paragraphs 88 and 89 claim that StunFence lost sales and was not able to effectively compete with other Gallagher distributors because of the higher pricing. Unlike the Sherman Act claims, these counts go beyond a rote recitation of terms of art, such that the defendants are put on notice of the acts of which StunFence complains. This is enough to allow StunFence to proceed with its Robinson-Patman claims.

*D. Count IV: § 13(f) of Robinson-Patman Act*

Using a similar vein of argument to Gallagher's challenge to Count III, Power Fence moves to dismiss Count IV on the basis that Power Fence and StunFence do not operate within the same market and thus cannot be competitors for purposes of the Robinson-Patman Act. According to Power Fence, StunFence concedes at three points within the amended complaint that they are not competitors, but the paragraphs to which Power Fence points do not support that contention. ¶¶ 13, 48, 81. Although those portions of the complaint indicate that PowerFence sold to StunFence's

competitors, placing them at a different level of the distribution chain, they also allege that PowerFence was in competition with StunFence. Power Fence goes on to argue that StunFence's allegations do not show that Power Fence knew or should have known of the supposedly discriminatory pricing. This argument is misplaced at this stage of the litigation; the time for proof has not yet arrived. For the time being, StunFence has stated a cognizable claim. See Eagle Window of Northern Illinois, Inc. v. Eagle Window & Door, Inc., 1990 WL 146662 (N.D. Ill. 1990).

*E. Count IX: Tortious Interference with Economic Advantage*

Power Fence challenges the sufficiency of the allegations within Count IX on the basis that none of the allegations are made with respect to Power Fence. That count does not refer to Power Fence specifically; it alleges that all defendants participated in the activities of which StunFence complains. Power Fence clearly falls within the ambit of the phrase "all defendants," so the fact that they are not mentioned by name does not merit dismissal of Count IX as to them. The issue Power Fence is actually addressing, namely whether StunFence will ultimately be able to prove the Power Fence was a willing participant, is another question entirely, and one that is properly left for a later time.

*F. Count XI: Illinois Consumer Fraud Act*

Count XI alleges that Gallagher violated the Illinois Consumer Fraud Act ("ICFA") by packaging non-Gallagher goods as Gallagher products and then charging higher rates for the mislabeled products, as well as duping StunFence into placing these products into fences that StunFence then markets as composed entirely of Gallagher parts. Gallagher contends that StunFence has no standing to pursue this claim because they are a commercial entity, not a consumer of

Gallagher's products.[1] The ICFA is a statute primarily concerned with protection of the consuming public, not entities further up the distribution chain. See Lake County Grading Co. v. Advance Mechanical Contractors, Inc., 654 N.E.2d 1109, 1114-15 (Ill. App. Ct. 1995). However, all is not lost for StunFence; a plaintiff that is not a consumer can still have standing to sue under the ICFA if they can show a nexus between the injuries they allege and injuries to the ultimate consumer. In re Estate of Albergo, 656 N.E.2d 97, 105 (Ill. App. Ct. 1995). If the conduct complained of implicates consumer protection concerns, a commercial entity that is not a consumer can proceed under the ICFA. Id.

The allegations in Count XI primarily focus on the effect of Gallagher's actions on StunFence's business, but they also allege that those actions will confuse and deceive the ultimate consumer of the electrified fence systems about the true source and quality of the components used within the Gallagher fences. These are issues that implicate concerns of the ultimate consumer. Barille v. Sears Roebuck and Co., 682 N.E.2d 118, 124 (Ill. App. Ct. 1997). StunFence thus passes the "consumer nexus" test. Clearly, StunFence will need more to prevail once proof is an issue, but for the purposes of 12(b)(6), Count XI provides enough to allow them to proceed.

## II. Gallagher's Counterclaim

### A. Count VI: Covenant Not to Compete

Count VI of Gallagher's counterclaim seeks entry of an injunction enforcing the terms of a covenant not to compete within the distribution agreement. To be enforceable, covenants not to compete must be reasonable. Dam, Snell and Taveirne Ltd. v. Verchota, 754 N.E.2d 464, 469 (Ill.

---

[1]The ICFA defines a consumer as "any person who purchases or contracts for the purchase of merchandise . . . for his use or that of a member of his household." 815 ILCS 505/1(e).

App. Ct. 2001). Reasonableness is determined by an examination of the hardship to the restricted party, the effect upon the general public, and the reasonableness of the time, territory, and activity restrictions contained within the covenant. Lawrence and Allen, Inc. v. Cambridge Human Resource Group, Inc., 685 N.E.2d 434, 441 (Ill. App. Ct. 1997). Because covenants not to compete at their heart restrain trade, they warrant careful scrutiny. Sheehy v. Sheehy, 702 N.E.2d 200, 208 (Ill. App. Ct. 1998).

If the covenant is reasonably calculated to safeguard the interests of one party without overburdening the other's ability to effectively do business or impeding the benefit to the public of a competitive market, courts will enforce these agreements according to their terms. See, e.g., Dam, 754 N.E.2d at 468-71; Midwest Television, Inc. v. Oloffson, 699 N.E.2d 230, 235 (Ill. App. Ct. 1998). If, however, the terms restrict the party subject to the covenant above and beyond the degree necessary to protect the claimed interest, the agreement is not enforceable. In this case, Gilmour claims that the covenant, geographically and with regard to the activities within its purview, are too excessive to be geared toward protecting any legitimate interest of Gallagher's. Instead, he interprets the broad wording of the provision as an attempt to eliminate any involvement by him in his chosen industry unless he continued his alliance with Gallagher.

Gallagher claims that the interest they seek to protect is their confidential business information, to which Gilmour was privy, and that the nature of this interest makes the lack of a geographic limitation permissible. Although this interest can justify broader protection than other interests, the wholecloth preclusion of Gilmour's participation in his chosen field is excessive. In addition, we disagree with Gallagher that this situation is more analogous to the purchase of a business than an employer-employee relationship; the distribution arrangement between the parties

strongly resembles that between a salesperson who operates in a specific geographic area for his or her employer. In such settings, non-competition agreements that extend beyond the geographic boundaries of the former sales territory have often been held unreasonable and unenforceable. See, e.g., Lawrence, 685 N.E.2d at 441; McRand, Inc. v. Van Beelen, 486 N.E.2d 1306, 1315 (Ill. App. Ct. 1985). The territorial and activity components of this provision exceed the reasonable limits of what would be necessary to protect any legitimate interest Gallagher had. Arpac Corp. v. Murray, 589 N.E.2d 640, 651 (Ill. App. Ct. 1992).

The geographical scope of the non-competition agreement is unrestricted. That is not necessarily fatal if it is coupled with an appropriate activity restriction. Eichmann v. Nat'l Hospital and Health Care Servs., Inc., 719 N.E.2d 1141, 1147 (Ill. App. Ct. 1999). However, the activities covered by the provision are extremely broad. Gilmour may not "carry on, be engaged in or interested in, be concerned in, grant financial assistance to, or obtain or assist in obtaining financial assistance for, be interested whether as employee, manager, proprietor, partner, shareholder, director, financier consultant or otherwise in any business undertaking associated with the products [described within the agreement] and systems relating to electric security fencing in competition with Gallagher . . . ." In other words, the agreement purports to completely exclude Gilmour from participating in any way in the security fencing business anywhere in the world for a year after the termination of the agreement. Thus, the covenant fails to narrow its scope to cover only certain activities similar to those Gilmour performed during his affiliation with Gallagher. Painting with so broad a brush militates against a conclusion that the covenant is reasonable as written.

Gallagher requests that, rather than completely invalidating the non-competition agreement, we modify it to preserve some enforceability. Where possible, courts will slightly alter an agreement

to reflect the intent of the parties. Weitekamp v. Lane, 620 N.E.2d 454, 461-62 (Ill. 1993); Eichmann, 719 N.E.2d at 1149. However, where a provision's effect is to prevent competition per se and to bring it within the realm of reasonableness would require the court to in essence begin with a blank slate, the proper course of action is to refuse enforcement of the overly restrictive provision altogether. Id. at 1147-49. The covenant in this case was clearly an attempt to prevent any possibility of Gilmour's participation in the electric fencing business unless he was in league with Gallagher. Gallagher had the opportunity to draft a provision calculated to protect its interests without completely binding Gilmour's hands. They must now live with their decision not to do so. As a result, there is no basis for the injunctive relief Gallagher seeks in Count VI, and that count is accordingly dismissed.

*B. Counts III, IV, and V: Lanham Act and ICFA Claims*

Counts III and IV of the Gallagher's counterclaim rest on two sections of the Lanham Act. The first, 15 U.S.C. § 1114, prohibits the use of a trademark in connection with the sale or advertisement of goods when such use is likely to cause confusion or mistake or to deceive the public. The second, 15 U.S.C. § 1125, forbids the use of "any word, term, name, symbol . . . or any false designation of origin" that is likely to cause confusion or mistake or to deceive the public as to the origin, sponsorship, or approval of the misdesignated goods or that misrepresents the nature, characteristics, or qualities of the goods. At the state level, the ICFA proscribes unfair methods of competition, including deception or misrepresentation of material facts. 815 ILCS 505/2. Because of the similarities between the federal statute and the ICFA; claims brought under the state statute are resolved according to the standards set out in the Lanham Act. Spex, Inc. v. Joy of Spex, Inc., 847 F. Supp. 567, 579 (N.D. Ill. 1994).

Gallagher alleges that StunFence used the Gallagher name and its marks in advertising and promoting StunFence's products that contained non-Gallagher components, labeled Power Fence systems with the StunFence trade name, and claimed that StunFence was the creator of the Power Fence product. Gallagher claims that this conduct constitutes an illegal "passing off," or selling one's goods or those of a third party under another's name or mark. Web Printing Controls, Co., Inc. v. Oxy-Dry Corp., 906 F.2d 1202, 1203 n.1 (7th Cir. 1990); Allergy Asthma Tech., Ltd. v. I Can Breathe, Inc., 195 F. Supp. 2d 1059, 1064-65 (N.D. Ill. 2002). StunFence contends that these claims can proceed because its agreement with Gallagher required StunFence to use the Gallagher marks in connection with the goods StunFence marketed. Assuming, as we must, that the allegations of the counterclaim are true, StunFence has taken a requirement to affix a name or label to a product to indicate its origin and corresponding characteristics and qualities and translated it into a license to mislabel and market inferior goods and to take credit for another party's creation. It is absurd for StunFence to suggest that a requirement to properly acknowledge the actual source of a good would permit StunFence to engage in activities that would actually degrade the integrity of the identifiers and allow StunFence to reap the benefits of another's ingenuity. Consequently, we conclude that Counts III, IV, and V state cognizable claims.

*C. Count IX: Tortious Interference with Business Relationships*

Lastly, StunFence takes issue with the cognizability of Count IX of the counterclaim, entitled merely "Tortious Interference." The deficiency they cite is the lack of an allegation of a direct contractual relationship. Gallagher defends the count by pointing out that Illinois recognizes two forms of tortious interference, both with a prospective business relationship and with a contract. Anderson v. Vanden Dorpel, 667 N.E.2d 1296, 1299 (Ill. 1996); Poulos v. Lutheran Social Servs.

of Illinois, Inc., 728 N.E.2d 547, 557 (Ill. App. 2000). Gallagher does not contend that the existence of a contract is alleged within Count IX; instead they argue that the count states a claim for interference with a prospective relationship and therefore need not include allegations of an existing contract. The language of the count itself, however, clearly indicates that Gallagher is referring to present relationships with its customers, not to dealings in the future. Therefore, despite Gallagher's characterization, we agree with StunFence that Count IX does not properly allege the components of the cause of action to which it refers. Accordingly, that count is dismissed.

## CONCLUSION

Based on the foregoing Gallagher's motion to dismiss is granted with respect to Counts I, II, V, VI, and X and denied with respect to Counts III and XI. Power Fence's motion is granted with respect to Count V and denied with respect to Counts IV and IX. Finally, StunFence's motion to dismiss is granted with respect to Counts VI and IX and denied with respect to Counts III, IV, and V of the counterclaim.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: 8/9/02